**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
Aryanna Y. Young (SBN: 344361)
aryanna@kazlg.com
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Maria Tobajian

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA TOBAJIAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, <br><br> Defendant. | Case No.: 2:23-cv-00753-DMG-PD <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> **Date**: January 10, 2025 <br> **Time**: 10 a.m. <br> **Courtroom**: 8C, 8th Floor <br> **Judge**: Hon. Dolly M. Gee <br><br> Complaint Filed: February 1, 2023 <br><br> [Filed concurrently with Declaration of Abbas Kazerounian; Declaration of Ryan L. McBride; Declaration of Aryanna Young; Declaration of Maria Tobajian; Supplemental Declaration of Gio; Proposed Order] |

*MEMORANDUM ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT*

1
2

**TABLE OF CONTENTS**

**Page No.**

I.    INTRODUCTION ...........................................................................................1

II.   BRIEF PROCEDURAL HISTORY SINCE PRELIMINARY APPROVAL........................2

III.  THE INVASION OF PRIVACY ACT AND CLASS ALLEGATIONS ..........................3

IV.   SETTLEMENT ............................................................................................3

    A.   The Final Approval Hearing..................................................................4

    B.   Attorneys' Fees, Costs, and Service Award ........................................4

    C.   The Terms of the Settlement Agreement..............................................4

        1.   Preliminary Certification of a Rule 23(b)(3) Settlement Class .......................4

        2.   The $3.3 Million Settlement Fund..............................................5

V.    SETTLEMENT ADMINISTRATION ...................................................................5

    A.   CAFA Notice........................................................................5

    B.   Email Notice.........................................................................6

    C.   Mail Notice..........................................................................6

    D.   Publication Notice .................................................................7

    E.   Detailed Notice on Settlement Website ...............................................7

    F.   Toll-Free Phone Number ........................................................8

    G.   Claims Procedure, Including Expenses, and Claims Received .........................8

        1.   No Objections; and One Request for Exclusion.................................8

        2.   Settlement Checks ..............................................................9

VI.   THE SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS
FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE ..........................................10

    A.   The Settlement Satisfies the Requirements of Fed. R. Civ. P. 23 ....................10

    B.   The Settlement Should be Finally Approved by the Court ..............................10

        1.   The Strength of the Lawsuit and the Risk, Expense, Complexity, and Likely Duration

1

of Further Litigation ................................................................................ 12

2.    The Amount Offered in Settlement .......................................................... 14

3.    Class Members were Provided with the Best Notice Practicable, Affording Them an

Opportunity to Determine Whether to Participate in the Settlement ................................... 16

4.    The Extent of Discovery Completed .......................................................... 17

5.    The Experience and Views of Counsel ...................................................... 17

6.    Positive Reaction of Settlement Class Members ........................................ 18

VII.    POTENTIAL CY PRES RECIPIENTS OF UNCLAIMS FUNDS .................................. 19

VIII.    CONCLUSION ............................................................................................. 19

## TABLE OF AUTHORITIES

Cases

*Ades v. Omni Hotels Mgmt. Corp.*,
 No. 2:13-cv-02468-CAS (MANx), 2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sep. 8, 2014).....
 ....................................................................................................................9, 13

*Adtrader, Inc. v. Google LLC*,
 (2021 U.S. Dist. LEXIS 99777 (N.D. Cal. March 23, 2021) ................................7, 16

*Alvarado v. Fed. Express Corp.*,
 384 F. App'x 585, 590 (9th Cir. 2010) .........................................................13

*Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act. Litig.)*,
 80 F. Supp. 3d 781 (N.D. Cal. Feb. 12, 2015).............................................13

*Bellows v. NCO Fin. Sys.*,
 No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) ...........11

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
 603 F.2d 623 (2d Cir. 1979) .........................................................................13

*Boyd v. Bechtel Corp.*,
 485 F. Supp. 610 (N.D. Cal. 1979).............................................................17

*Chavez v. Converse, Inc.*,
 No. 15-cv-03746-NC, 2020 U.S. Dist. LEXIS 257679 (N.D. Cal. Nov. 25, 2020).................11

*Churchill Vill., L.L.C. v. GE,*

    361 F.3d 566 (9th Cir. 2004) ................................................................. 11

*Class Plaintiffs v. Seattle,*

    955 F.2d 1268 (9th Cir. 1992) ............................................................... 11

*Cohorst v. BRE Properties, Inc.,*

    No. 10-cv-2666 JM, 2012 WL 153754, Dkt. Nos. 101 (S.D. Cal. 2012) ................................. 15

*Couser v. Comenity Bank,*

    125 F. Supp. 3d 1034 (S.D. Cal. 2015) .................................................. 18

*Couser v. Dish One Satellite, LLC,*

    No. RIC 1603185 (Sup. Ct. Riverside May 3, 2019) ........................... 14

*Create-A-Card, Inc. v. INTUIT, Inc.,*

    No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989 (N.D. Cal. Sep. 22, 2009) ............... 11

*Ellis v. Naval Air Rework Facility,*

    87 F.R.D. 15 (N.D. Cal. 1980) ............................................................. 18

*Ferrington v. McAfee, Inc.,*

    2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012) ....................... 17

*Forcellati v. Hyland's Inc.,*

    No.12-cv-1983, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ................................. 17

*Garibaldi v. Bank of Am.*,

    No. 3:13-CV-02223-SI, 2015 U.S. Dist. LEXIS 182910 (N.D. Cal. Aug. 28, 2015) ............... 9

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ......................................................................... 10, 11

*Hendricks v. StarKist Co.*,

    2016 U.S. Dist. LEXIS 134872 (N.D. Cal. 2016) ...................................................... 7

*In re Diamond Foods, Inc.*,

    No. C 11-05386 WHA, 2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014) ..................... 9

*In re Ferrero Litig.*,

    No. 11-CV-00205-H (CAB), 2012 U.S. Dist. LEXIS 15174, (S.D. Cal. Jan. 23, 2012) .......... 11

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1988) ......................................................................... 17

*M. Berenson Co. v. Faneuil Hall Marketplace*,

    671 F. Supp. 819 (D. Mass. 1987) ..................................................................... 11

*McCabe v. Six Continents Hotels, Inc.*,

    No. 12-cv-04818, 2015 U.S. Dist. LEXIS 85084 (N.D. Cal. June 30, 2015) ...................... 15

*Medieros v. HSBC Card Servs.*,

    No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484 (C.D. Cal. Oct. 23, 2017)... 18

*Miller v. Hitachi Am.*,

    No. CIV 526430, 2014 Cal. Super. LEXIS 1686 (San Mateo Oct. 17, 2014) .......................... 14

*Morey v. Louis Vuitton N. Am. Inc.*,

    No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331 (S.D. Cal. Jan. 9, 2014) .............. 16

*Mount v. Wells Fargo Bank, N.A.*,

    BC395959 (Cal. Super. Ct. Aug. 13, 2014) ................................................................. 17

*Nachshin v. AOL, LLC*,

    663 F.3d 1034 (9th Cir. 2011) ................................................................................ 19

*Nat'l Rural Telecoms. Coop. v. Directv, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 11, 15, 18

*Nwabueze v. AT&T Inc.*,

    No. C 09-01529 SI, 2013 U.S. Dist. LEXIS 169270 (N.D. Cal. Nov. 27, 2013) ..................... 11

*Officers for Justice v. Civil Serv. Com.*,

    688 F.2d 615 (9th Cir. 1982) .................................................................. 10, 11, 12

*Rannis v. Recchia*,

    380 F. App'x 646 (9th Cir. 2010) ................................................................................ 7

*Rodriguez v. West Publishing Corp.*

    *563 F.3d 948 (9th Cir. 2009)* ................................................................................ 11

*Romero v. Producers Dairy Foods, Inc.*,

    235 F.R.D. 474 (E.D. Cal. 2006).............................................................................16


*Romero v. Securus Techs., Inc.*,

    No. 16cv1283 JM (MDD), 2018 U.S. Dist. LEXIS 63084 (S.D. Cal. Apr. 12, 2018).............13


*Ronquillo-Griffin v. Telus Communs., Inc.*,

    No. 17cv129 JM (BLM), 2017 U.S. Dist. LEXIS 99577 (S.D. Cal. June 27, 2017) ...............14


*Ronquillo-Griffin v. TransUnion Rental Screening Sols., Inc.*,

    No. 17CV129-JM (BLM), 2018 U.S. Dist. LEXIS 3227 (S.D. Cal. Jan. 8, 2018) ..................15


*Schuchardt v. Law Office of Rory W. Clark*,

    314 F.R.D. 673 (N.D. Cal. 2016) ...........................................................................17


*See Jaffe v. Morgan Stanley & Co.*,

    No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 7, 2008) .................12, 15


*Silber v. Mabon*,

    18 F.3d 1449 (9th Cir. 1994) ................................................................................16


*Spears v. First Am. Eappraiseit*,

    No. 5-08-CV-00868, 2015 U.S. Dist. LEXIS 58530 (N.D. Cal. Apr. 27, 2015) .....................16


*Spence-Ruper v. Scientiae*,

    No. 8:19-cv-01709-DOC-ADS, 2021 U.S. Dist. LEXIS 204242 (C.D. Cal. Sep. 24, 2021)....10

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) ...................................................................... 10

*Torres v. Nutrisystem, Inc.*,

   289 F.R.D. 587 (C.D. Cal. April 8, 2013) .................................................. 13

*United States v. Armour & Co.*,

   402 U.S. 673 (1971) ................................................................................... 13

Statutes

28 U.S.C. § 1715(b) ........................................................................................ 5

Cal. Civ. Proc. Code § 1021.5 ....................................................................... 14

California Invasion of Privacy Act .................................. 3, 13, 14, 16, 17, 18

Other Authorities

David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1598 n.188 (1995) .................................... 15

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide,* at 3 (2010) ........................................................ 16

Federal Justice Center, Manual for Complex Lit., Fourth § 30.42 ................. 17

William B. Rubenstein, Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002) ................. 17

## I.    INTRODUCTION

Plaintiff Maria Tobajian ("Ms. Tobajian" or "Plaintiff") seeks final approval of the proposed class action settlement with Defendant Allstate Insurance Company ("Ocwen" or "Defendant") memorialized in the Settlement Agreement ("Agreement" or "Agr.") and its Addendum. Plaintiff submits this Memorandum in Support of Motion for Final Approval of Class Action Settlement ("Final Approval Motion"), the Declaration of Maria Tobajian ("Tobajian Decl."), the Supplemental Declaration of Gio Santiago ("Santiago Supp. Decl"), and the accompanying declarations of Class Counsel—i.e., Declaration of Abbas Kazerounian ("Kazerounian Decl."), Declaration of Ryan L. McBride ("McBride Decl."), and Declaration of Aryanna Young ("Young Decl.")—in support thereof.

This settlement is the culmination of almost two years of litigation and provides for significant monetary relief. The Settlement Agreement (filed at Dkt. No. 40-2[1]), reached after a mediation session before Hunter R. Hughes of Hunter Hughes ADR and a mediator's proposal, calls for a $3,300,000.00 common settlement fund (the "Settlement Fund") that will provide significant financial benefits to persons making valid claims from a group of 130,005 potential Settlement Class Members in California whose cellular telephone conversations on at least one outgoing call from Defendant was recorded by Defendant and/or its agent(s), allegedly without consent within the applicable Class Period (i.e., February 1, 2022 and December 31, 2022), in purported violation of California's Invasion of Privacy Act, Cal. Pen. Code § 630, *et seq.* ("CIPA").

The Settlement Fund is an all-in, non-reversionary fund (*see* Agr. §§ 4.1, 4.1.6), with the Settlement Class receiving a monetary payment on a *pro rata* basis (*id.* § 4.1.5). The Settlement Class Members were afforded a reasonable opportunity to submit a Claim Form online through the Settlement Website (https://www.tobajiansettlement.com/) or by mail to the Administrator. *Id.* § 7.1(a)-(b). The approximately 130,005 Settlement Class Members were informed of the Settlement by Email Notice, Mail Notice (if email address not found or undeliverable by email), Publication Notice, and detailed notice posted on the Settlement Website, after the Administrator

---

[1]  Defined terms are used as defined in the Settlement Agreement.

1  received Settlement Class Members' last known addresses from Defendant (*id.* § 6.2) and
2  performed a search on the National Change of Address database ("NCOA") to ensure that the
3  most current addresses were being used (*id.* § 6.2.1).

4       As of November 18, 2024, after subtracting the requested combined award of attorneys'
5  fees and costs (i.e., $990,000), the requested Service Award to Plaintiff ($3,000), and the
6  estimated notice and administrative expenses from the Settlement Fund ($193,926), each of the
7  6,021 class members who made a claim will be entitled to a settlement check between $275.57
8  and $4,684.69. As the claim form review process is ongoing, Plaintiff intends to provide updated
9  figures at the time of the Fairness Hearing should there be additional valid claims made. Also, as
10  of November 18, 2024, only one Settlement Class Member requested exclusion from the
11  Settlement, and there are no objections to the Settlement.

12       As explained more thoroughly below, this settlement is fair, reasonable and adequate.
13  Therefore, the settlement should be given final approval.

14  **II.    BRIEF PROCEDURAL HISTORY SINCE PRELIMINARY APPROVAL**

15       The Court granted preliminary approval of the proposed class action settlement on June
16  21, 2024. Dkt. No. 45 (the "Preliminary Approval Order"). Class Notice was subsequently
17  provided to all Settlement Class Members on July 22, 2024. Admin Decl., ¶¶ 7, 10. Settlement
18  Class Members were afforded until October 30, 2024, to submit a Claim Form, or to submit any
19  objections or requests for exclusion from the Settlement (*id.*). Dkt. No. 45.

20       On August 30, 2024, Plaintiff timely filed the Motion for Attorneys' Fees, Costs and
21  Service Award (the "Fee Brief"), pursuant to the Court's Preliminary Approval Order (Dkt. No.
22  45).  The Fee Brief was promptly posted on the Settlement Website on September 4, 2024.
23  Santiago Supp. Decl. ¶ 2; McBride Decl. ¶ 12.

24       Plaintiff now submits this timely Motion for Final Approval of Class Action Settlement.
25  Pursuant to Fed. R. Civ. P. 23(e), Plaintiff seeks final certification and approval of the proposed
26  class action settlement. Plaintiff specifically requests that the Court enter the proposed Final
27  Approval Order as well as proposed Final Judgment pursuant to Fed. R. Civ. P. 58(a), submitted
28  herewith.

---

**MEMORANDUM ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## III.    THE INVASION OF PRIVACY ACT AND CLASS ALLEGATIONS

The California State Legislature passed the California Invasion of Privacy Act ("CIPA") in 1967 to protect the privacy of Californians, replacing prior laws which permitted the recording of telephone conversations with the consent of one party to the conversation. Cal. Pen. Code § 632.7 was added to CIPA in 1992 due to specific privacy concerns over the increased use of cellular and cordless telephones. Section 632.7 prohibited intentionally recording all communications involving cellular and cordless telephones, without regard to whether they constitute confidential communications. Plaintiff alleges that Defendant violated CIPA, specifically Cal. Pen. Code § 632.7, by contacting Plaintiff and the Settlement Class on their cellular telephones and audio recording the conversations without their knowledge or consent. *See* Complaint ("Complaint"), Dkt. No. 1, ¶ 31. In compensation for these alleged violations of CIPA, Plaintiff sought statutory damages of $5,000.00 for each violation, pursuant to Cal. Pen. Code § 632.7(a). Complaint, ¶¶ 37, Prayer for Relief.

## IV.    SETTLEMENT

In an earnest attempt to settle this action and avoid the delays and risks inherent in proceeding to trial, the Parties discussed settlement on several occasions. As noted in the Preliminary Approval Motion, the Settlement Agreement resulted from extensive arm's length negotiations, including a private mediation session before Hunter R. Hughes of Hunter Hughes ADR, on December 18, 2023, and a mediator's proposal. [Kazerounian Decl., ¶ 9.] The Parties also conducted discovery, including Plaintiff sending formal written discovery, a deposition notice, and exchange of informal discovery in preparation of the mediation and subsequent preliminary approval motion filing. [McBride Decl., ¶ 8.] Additionally, as noted in the Preliminary Approval Motion, Class Counsel have vigorously litigated this matter since its inception, overcoming a motion strike class allegations. Dkt. No. 40-1, p. 11.

The significant time and effort spent on litigation, discovery, and settlement negotiations, as well as the time spent in mediation with an experienced mediator, militate in favor of final approval of the proposed settlement, as such factors indicate that there was no collusion among

the Parties. This action has been ongoing since February 1, 2023, and the efforts of Class Counsel to reach a compromise in the form of a proposed class settlement proved fruitful, resulting in a mutual understanding, the terms of which are memorialized in the Agreement and the later Addendum thereto.

### A.    The Final Approval Hearing

At the Final Approval Hearing scheduled for January 10, 2025, the Court will consider the Fee Brief (Dkt. No. 47) and determine whether to finally approve the Settlement. Agr. § 2.17.

### B.    Attorneys' Fees, Costs, and Service Award

As explained in the Fee Brief, Class Counsel seek $990,000.00 in combined attorneys' fees and expenses ($13,405.96 in costs and $976,594.04 in attorneys fees), representing 30% of the $3,300,000.00 Settlement Fund. Agr. § 14.1. Class Counsel also seek a Service Award for Plaintiff of $3,000.00 from the Settlement Fund. Agr. § 14.3. Plaintiff, therefore, respectfully requests that the Court enter the proposed Final Approval Order submitted herewith, which includes a provision for the requested attorneys' fees, costs, Service Award, and notice as well as reasonable settlement notice and administration expenses.

### C.    The Terms of the Settlement Agreement

This action has been preliminarily certified, for settlement purposes only, as a California class action, providing for a $3,300,000.00 Settlement Fund. *See* Dkt. No. 45.

#### 1.    Preliminary Certification of a Rule 23(b)(3) Settlement Class

The Settlement Class is defined as:

> All persons in California whose cellular telephone conversation on at least one outgoing call from the LDU Business Unit of Defendant was recorded by Defendant and/or its agent(s) without that person's consent within the Class Period (as defined below).

> Excluded from the Class are:  (i) individuals who are or were during the Class Period officers or directors of Defendant or any of its respective Affiliates; (ii) the District Judge and any Magistrate Judge assigned to the case, their staff, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; and (iii) all persons who file a timely and proper request to be excluded from the Class.

Dkt. No. 45, pg. 3.

**2.    The $3.3 Million Settlement Fund**

The Settlement Agreement establishes a $3,300,000.00 non-reversionary Settlement Fund paid by Defendant to resolve the claims at issue in this action. *See* Agr. § 4.1. Payments from the Settlement Fund are in the form of a *pro rata* settlement check, which will be mailed to each of the Settlement Class Members who made a valid and timely claim. *Id.* § 4.15. The Administrator will then send the settlement checks by mail no later than thirty (30) days after the Effective Date. *Id.* § 7.5.

One hundred and eighty (180) days after the checks are issued, the Administrator will void any outstanding checks, calculate the amount remaining in the Settlement fund and, after reserving an amount for anticipated remaining settlement administration fees or costs, make a second *pro rata* distribution by check for the remaining amount of the Settlement Fund to those Claimants who have already cashed their initial settlement checks. *Id.* §§ 4.1.5, 4.1.6. The second round of distributions will be made until administratively infeasible. *Id.* § 4.1.6. If any amount is to remain in the Settlement Fund after the second round of distribution, the Administrator is to further distribute that amount to a *cy pres* recipient(s). *Id.* Plaintiff recommends that the National Consumer Law Center and The Center on Privacy and Technology at Georgetown Law be approved by the Court as the contingent *cy pres* recipients to receive equal shares of any amount left in the Settlement fund after redistribution. *Id.*

**V.    SETTLEMENT ADMINISTRATION**

The Administrator's compliance with the Agreement and the Preliminary Approval Order is described below.

**A.    CAFA Notice**

On July 5, 2024, the Administrator, on behalf of Defendant, mailed out CAFA notice, in compliance with 28 U.S.C. § 1715(b). Dkt. No. 50, ¶ 2. Defendant's counsel received a response to the CAFA Notice Packet from the Indiana Department of Insurance on July 16, 2024. Dkt. No. 50, ¶ 5. Defendant's counsel responded to that inquiry via email on July 23, 2024, and no follow up inquiry was received. *Id.*

**B. Email Notice**

On July 22, 2024, the Administrator caused an Email Notice to be sent to the 67,643 valid email addresses in the Class List. (Dkt. No. 50, ¶ 10). On October 14, 2024, the Administrator caused a Reminder Email Notice to be sent to 52,533 class members who have not filed a claim and for who the Administrator had email addresses. (Dkt. No. 50, ¶ 11). The Administrator complied with the notice procedures set forth in the Preliminary Approval Order (Dkt. No. 45) and Settlement Agreement (Agr. § 6.1). The Email Notice was formatted to avoid common "red flags" that could cause the email to be blocked by spam filters. For example, the content of the notice was placed in the body of the email rather than as an attachment to avoid spam filters and improve deliverability. The Email Notice also contained a provision directing Spanish-speaking potential Settlement Class Members to the Settlement Website, which included the relevant settlement information in Spanish. The Spanish versions of the Notice and Claim Forms also were available upon request by calling the toll-free number on the Email Notice.

**C. Mail Notice**

After having received a class list from Defendant, the Administrator utilized the NCOA to update the addresses on that list before mailing out 56,482 mail notices to Settlement Class Members on July 22, 2024. Dkt. No. 50, ¶ 7. The mailed notices that were sent out by the Administrator informed Settlement Class Members of the Settlement Website address where they were able to obtain further information about the settlement and make a claim online. *Id*; *see also*, Dkt. No. 50, pgs. 19-20. The same Mail Notice informed Settlement Class Members that they could call the Settlement Administrator's toll-free telephone number to obtain information about the settlement. (Dkt. 50, pg. 25). Since notice was mailed out on July 22, 2024, the Administrator has recorded 7,550 mail notices as undeliverable (Dkt. No. 50, ¶ 8).

Notice to potential Settlement Class Members for whom a postal address was identified and for whom an email address was not available or whose email was known not to have been successfully delivered, was made by the Administrator by means of separate first class mailings to those names and addresses of a single-postcard summary notice substantially similar to Exhibit E

to the Settlement Agreement. The Administrator complied with the notice procedures set forth in the Preliminary Approval Order (Dkt. No. 45) and Settlement Agreement (Agr. § 6.2).

Taken together, the email and mail notice amounted to a notice reach of approximately 89.9% of the class members (taking into account that 7,550 addresses were undeliverable). This is reasonable under the circumstances. The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010); *see also Adtrader, Inc. v. Google LLC* (2021 U.S. Dist. LEXIS 99777 (N.D. Cal. March 23, 2021); *see also Hendricks v. StarKist Co*., 2016 U.S. Dist. LEXIS 134872 (N.D. Cal. 2016) ("While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice."); *See also Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

### D.    Publication Notice

On July 22, 2024, the Administrator purchased approximately 10,500,000 impressions to be distributed programmatically via various websites and mobile apps from July 22, 2024, through August 20, 2024. (Dkt. No. 50, ¶ 12). The impressions were targeted to Adults 18 years of age and older in California. *Id.* A total of 11,040,405 impressions were delivered, resulting in an additional 540,405 impressions at no extra charge. *Id*.

### E.  Detailed Notice on Settlement Website

The Administrator posted full and detailed notice on the Settlement Website, which explained the case, the proposed settlement, and Class Members' options regarding the proposed settlement. *Id.* ¶ 13. Among other things, the Settlement Website contains a copy of the Settlement Agreement, the Preliminary Approval Order, a downloadable claim form, and the Fee Brief. *Id.* ¶ 12. The Settlement Website therefore provided notice of the proposed settlement and other aspects of the settlement class notice program to Settlement Class Members.  *Id.* As of November 17, 2024, there were 65,098 visits to the Settlement Website. *Id*.

---

**MEMORANDUM ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**F.  Toll-Free Phone Number**

On July 22, 2024, the Administrator established a toll-free telephone number at which Settlement Class Members were able to call to ask a live operator questions about the settlement. *Id.* at ¶ 14.

**G.  Claims Procedure, Including Expenses, and Claims Received**

The Administrator prepared a class list based on records obtained from Defendant. *Id.* at ¶ 6. Settlement Class members were then given one hundred (100) days after Class Notice ("Claim Deadline") was sent to make a claim for a settlement check. (Dkt. No. 45, pg. 10).

The procedure for submitting a claim was made as easy as possible. A Claim Form could be submitted either by U.S. Mail or online via the Settlement Website. Agr. § 7.1(a)-(b). All that the Settlement Class Members were required to provide in submitting a valid claim was their full name, current address, the cellular telephone number on which they received a call from Defendant during the Class period, and a signature certifying that they are part of the Settlement Class. Agr. § 7.1(a).

As of November 18, 2024, the Administrator has received a total of 6,021 timely valid claims. (Dkt. No. 50, ¶ 15). The Administrator has received one request for exclusion *Id.* ¶ 16. Given that the claim form review process is ongoing, Plaintiff will provide updated figures at the time of the Fairness Hearing.

Within thirty (30) days of the Effective Date, the Administrator is to remit the appropriate Settlement Relief amounts by check to valid Claimants. Agr. § 7.5. The settlement checks will expire one hundred and eighty (180) days after the date of issuance. *Id.* § 4.1.6.

**1.    No Objections; and One Request for Exclusion**

Settlement Class Members were permitted to opt-out or submit an objection to the Settlement. *See* Agr. at §§ 11-12. As of November 18, 2024, the Administrator has received one request for exclusion and zero objections to the Settlement. (Dkt. No. 50 at ¶ 16. Further, there is no record on the Court's docket of any objections or requests for exclusion mailed to the Court. The deadline to submit a request for exclusion or object was October 30, 2024. *Id.* The fact that there were no objections and only one request for exclusion out of the approximately 130,005

Settlement Class Members is highly supportive of the proposed settlement's adequacy. *See, e.g., Garibaldi v. Bank of Am.*, No. 3:13-CV-02223-SI, 2015 U.S. Dist. LEXIS 182910, at *4 (N.D. Cal. Aug. 28, 2015) (granting final approval when, of 38,243 eligible Class members, only 21 individuals requested for exclusion and 2 individuals objected) (Illston, J.); *In re Diamond Foods, Inc.*, No. C 11-05386 WHA, 2014 U.S. Dist. LEXIS 3252, at *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.").

### 2. Settlement Checks

The net settlement amount available to pay Settlement Class members is estimated to be approximately $2,113,074, which was determined by subtracting from the Settlement Fund the anticipated Service Award of $3,000.00, Class Counsel's requested combined attorneys' fees and costs of $990,000[2] (approximately 30% of the total Settlement Fund), and estimated Notice and Administrative Costs of $193,926. *See* Dkt. No. 40. Based on the net settlement amount, the current class members totaling 6,021 and representing 7,668 total calls, would receive a check for $275.57 per call.  The class member with the most calls received 17 calls. This means class members will receive a check ranging anywhere from $275.57 to $4,684.69[3] from the Settlement Fund, depending on the number of calls each Claimant received.

Due to the risks of individually suing for statutory damages of $5,000.00 under California Penal Code § 632.7, no Settlement Class Member would likely be able to obtain such recovery on their own. *See Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-02468-CAS (MANx), 2014 U.S. Dist. LEXIS 129689, at *43 (C.D. Cal. Sep. 8, 2014) ("[T]he Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and

---

[2] Section 14.1 of the Agreement provides in part: "Plaintiff may apply to the Court for an award of Attorneys' Fees and Expenses from the Settlement Fund."

[3] This is calculated as the total Settlement Fund ($3,300,000.00) minus i) attorneys' fees and costs ($990,000.00); ii) estimated Notice and Administration Costs ($193,926.00), and iii) a Service Award ($3,000.00), all divided by the total number of calls. Then multiply the number of calls by 275.57.

---

1  legal issues as to weigh against class certification.").

2  **VI.    THE SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS**
3  **FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE**

4  The relevant settlement factors demonstrate that the proposed settlement should be finally
5  approved as fair, reasonable, and adequate.

6  **A.  The Settlement Satisfies the Requirements of Fed. R. Civ. P. 23**

7  The Court has preliminarily determined that the proposed settlement satisfies Rule 23's
8  requirements. Dkt. No. 45, pg. 2. Plaintiff analyzed and applied the relevant Rule 23(a) and (b)
9  factors to the class in his Motion for Preliminary Approval. *See* Dkt. No. 40-1, pp. 20-25. There is
10  no reason such findings should be disturbed. Since preliminary approval, Plaintiff has continued
11  to serve as an adequate Class Representative by reviewing documents and submitting a declaration
12  in support of the Final Approval Motion. [*See* Kazerounian Decl., ¶ 12; Tobajian Decl., generally]
13  Class Counsel have also continued to adequately represent the interests of the Settlement Class
14  Members and the named Plaintiff, having, among other things, timely filed the Fee Brief on August
15  30, 2024 (Dkt. Nos. 47) and otherwise assisting with settlement administration. (McBride Decl.,
16  ¶¶ 6, 20). Further, the Class Notice was provided as required in the Preliminary Approval Order.
17  Admin Decl., ¶¶ 7-14.

18  **B.  The Settlement Should be Finally Approved by the Court**

19  "Unlike the settlement of most private civil actions, class actions may be settled only with
20  the approval of the district court." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 623 (9th
21  Cir. 1982). "[T]he court may approve [a class settlement] only after a hearing and only on finding
22  that it is fair, reasonable, and adequate . . .." Fed. R. Civ. P. 23(e)(2). The Court has broad discretion
23  to grant such approval and should do so where the proposed settlement is "fair, adequate,
24  reasonable, and not a product of collusion." *Spence-Ruper v. Scientiae*, No. 8:19-cv-01709-DOC-
25  ADS, 2021 U.S. Dist. LEXIS 204242, at *4 (C.D. Cal. Sep. 24, 2021) (citing *Hanlon v. Chrysler
26  Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

27  "To determine whether a settlement agreement meets these standards, a district court must
28  consider a number of factors[.]" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). These

factors include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.; Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2013 U.S. Dist. LEXIS 169270, at *9 (N.D. Cal. Nov. 27, 2013) (Illston, J.) (quoting *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004)). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sough, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risk of litigation and the immediacy and certainty of a substantial recovery. *Bellows v. NCO Fin. Sys.*, No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525, at *17 (S.D. Cal. Dec. 2, 2008).

The Ninth Circuit has long supported settlement reached by capable opponents in arm's-length negotiations. In *Rodriguez v. West Publishing Corp.*, the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027). The district court must exercise "sound discretion" in approving a settlement. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Chavez v. Converse, Inc.*, No. 15-cv-03746-NC, 2020 U.S. Dist. LEXIS 257679, at *13 (N.D. Cal. Nov. 25, 2020). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987), *cited approvingly in Create-A-Card, Inc. v. INTUIT, Inc.*, No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *14-15 (N.D. Cal. Sep. 22, 2009); *see also In re Ferrero Litig.*, No. 11-CV-00205-H (CAB), 2012 U.S. Dist. LEXIS 15174, at *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telecoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Applying the relevant factors here confirms that the Settlement should be finally approved, as it was reached only after the Parties had spent nearly two (2) years litigating this action; participated in a mediation session before an experienced mediator, Hunter R. Hughes, Esq. of Hunter Hughes ADR[4]; the Parties conducted formal and informal discovery; and finally, after all of that, the Parties independently accepted a mediator's proposal. Based on the facts of this case, the extensive time and effort spent in litigating this case, and the likely risks of continuing to litigate this case, Plaintiff and Class Counsel agree that this Settlement is fair, adequate and reasonable. *See* Kazerounian Decl., ¶¶ 11, 14; McBride Decl., ¶¶ 13, 18; Young Decl., ¶¶ 11, 17; Tobajian Decl., ¶ 5.

### 1. **The Strength of the Lawsuit and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Defendant has raised several challenges to Plaintiff's claims and putative class claims. This included several affirmative defenses (Dkt. No. 27), a motion to dismiss (Dkt. No. 19), and a motion to strike class allegations (Dkt. No. 19). As demonstrated by the above filings, Defendant vigorously defended the case and believes that its defenses have merit. Plaintiff is similarly confident that his putative class claims have merit. Nevertheless, the Parties are aware that further litigation can pose substantial risks and expense to everyone involved. As such, the Parties agree that this settlement eliminates any further risk and expense that would inevitably result from further litigating this action. *Id.* §§ 1.7, 1.8.

The Settlement here is fair, reasonable, and adequate considering the potential risks and expenses associated with continued litigation, the probability of appeals by either party, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation. As the Ninth Circuit has opined, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal

---

[4] *See Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208, at *52 (N.D. Cal. Feb. 7, 2008) ("This Settlement was reached under the supervision of experienced mediator Hunter Hughes, Esq. Counsel for the parties are experienced class action lawyers who retained Mr. Hughes for his expertise in mediating many complex class actions . . .."); https://hunteradr.com/cv.html (last visited July 12, 2022).

1    quotation marks omitted). "Naturally, the agreement reached normally embodies a compromise;

2    in exchange for the saving of costs and elimination of risk, the parties each give up something they

3    might have won had they proceeded with litigation . . .." *Id.* (quoting *United States v. Armour &*

4    *Co.*, 402 U.S. 673, 681-82 (1971)) (internal quotation marks omitted).

5         While Class Counsel believe strongly in the merits of the claims brought on behalf of the

6    proposed Class, they also recognize that any case involves risk and that settlements of contested

7    cases are preferred in this circuit. Indeed, some courts in this circuit have denied motion for class

8    certification of CIPA actions, *see, e.g., Romero v. Securus Techs., Inc.*, No. 16cv1283 JM (MDD),

9    2018 U.S. Dist. LEXIS 63084 (S.D. Cal. Apr. 12, 2018), while others have granted class

10   certification of CIPA claims on contested motions, *see, e.g., Ades*, 2014 U.S. Dist. LEXIS 129689.

11   Risks would remain regardless of whether Plaintiff were to prevail at trial. *See, e.g., Alvarado v.*

12   *Fed. Express Corp.*, 384 F. App'x 585, 590 (9th Cir. 2010) (reversing and remanding for a new

13   trial on punitive liability and damages after the plaintiff was awarded $300,000 in punitive

14   damages); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 623 (2d Cir. 1979) (reversing $87

15   million judgment after trial); *see also Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. April

16   8, 2013) (Denying motion for class certification for multiple reasons).

17        The risks in this action were explained in depth in the Preliminary Approval Motion (Dkt.

18   No. 40-1, pp. 27-31) and Fee Brief (Dkt. No. 47, pp. 4-5). In short, if the action were to proceed

19   without settlement, Plaintiff anticipates that Defendant would continue to challenge Plaintiff's

20   claims through class certification and trial. *See* Agr. § 1.8. This is evidenced by the motion practice

21   discussed above. Without a class settlement, the Parties would need to move toward spending

22   additional time and expense—in an action that has already spanned nearly two (2) years—

23   preparing for trial. Finally, any decision on the merits is also likely to be appealed, resulting in

24   further delay, uncertainty, and expense.

25        The possibility of losing on a motion for class certification on a contested motion and losing

26   at trial further makes this settlement an acceptable compromise. *See Amadeck v. Capital One Fin.*

27   *Corp. (In re Capital One Tel. Consumer Prot. Act. Litig.)*, 80 F. Supp.3d 781, 791 (N.D. Cal. Feb.

28   12, 2015) (approving class settlement despite "serious obstacles to class certification").

### 2. The Amount Offered in Settlement

As mentioned above, the Settlement Agreement would require the Defendant to pay into an all-in, non-reversionary Settlement Fund of $3,300,00.00. Agr. § 4.1. Each valid and approved Claim is entitled to a *pro rata* share of the Settlement Fund based on the number of calls received, after Administrative Costs, a Service Award to the Class Representative, and attorneys' fees and costs are deducted. *Id.* § 4.1.5.

As there are 6,021 claims determined to be valid, the individual recovery to Settlement each Class Member will be between $275.57 and $4,684.69 (the class member with 17 calls will likely be getting $4,684.69 with the current calculation), depending on the number of calls received by the Class Member. *See* McBride Decl. ¶ 11. This estimated payment is a significant result for Class Members, who only had to take a few minutes to submit a Claim either online or by mail. *See* Agr. § 7.1(a)-(b). Based on the law of the case, at most the Plaintiff and absent class members here could receive an award of $5,000.00 per violation (Cal. Pen. Code § 637.2), with no express provision for recovery of attorneys' fees. *Ronquillo-Griffin v. Telus Communs., Inc.*, 2017 U.S. Dist. LEXIS 99577, at *20 (S.D. Cal. June 27, 2017) (recognizing that CIPA provides for statutory damages of $5,000.00 per violation). Attorneys' fees would have to be sought under Cal. Civ. Proc. Code § 1021.5, if successful in bringing an action which has resulted in the enforcement of an important right affecting the public interest, among other requirements.

The relief afforded to Settlement Class Members here exceeds the relief afforded in many other CIPA class action settlements. *See, e.g., Miller v. Hitachi Am.*, No. CIV 526430, 2014 Cal. Super. LEXIS 1686 (San Mateo Oct. 17, 2014) (granting preliminary approval of CIPA class action settlement with different settlement classes receiving $20 or $145 per class member)[5]; *Couser v. Dish One Satellite, LLC*, No. RIC 1603185 (Sup. Ct. Riverside May 3, 2019) (finally approved CIPA class action settlements involving 360 settlement class members where the estimated recovery at a 100% claims rate was $211; and the actual recovery was $276 per valid

---

[5] The two sub-classes received anywhere from $126.21 to $1,254.26 per class member after final approval.

claimant).[6]

This settlement is akin to *Ronquillo-Griffin v. TransUnion Rental Screening Sols., Inc,* 2018 U.S. Dist. LEXIS 3227 (S.D. Cal. Jan. 8, 2018) where no disclosure was given at all during the recordings at issue. The size of the settlement class has frequently influenced the amount of individual class member recovery, wherein settlements with a larger class size tend to have smaller individual recoveries. Thus, the estimated recovery provided by this settlement here is much greater than in many other finally approved CIPA class action settlements and is fair and adequate based on the risks and facts of the present case.

It is also well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See Nat'l Rural Telecoms. Coop.*, 221 F.R.D. at 528 ("well settled law that a proposed settlement may be accepted even though it amounts to only a fraction of the potential recovery"); *See Jaffe*, 2008 U.S. Dist. LEXIS 12208, at *29 ("The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial.").

Such settlement results may also benefit the general public from a potential deterrent effect on potential future CIPA violations. *See* David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1598 n.188 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance.").

___

[6] This is much higher than in several other CIPA cases. *See e.g.*, *Cohorst v. BRE Properties, Inc.*, No. 10-cv-2666 JM, 2012 WL 153754, Dkt. Nos. 101, 109 (S.D. Cal. 2012) ($5.5 million settlement for approximately 1,170,584 potential class members, or $4.70 per person); *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-04818, 2015 U.S. Dist. LEXIS 85084, at *27-29 (N.D. Cal. June 30, 2015) (collecting cases approving CIPA settlements of $1-$7.50 per class member).

**3.**    **Class Members were Provided with the Best Notice Practicable, Affording Them an Opportunity to Determine Whether to Participate in the Settlement**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3) the court must direct to class members the "best notice that is practicable under the circumstances[.]" Rule 23(c)(2)(B) does not require "actual notice" or that notice be "actually received[.]" *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

According to the Administrator, there was a direct email and mail notice reach of approximately 89.9% of the estimated 130,005 Settlement Class Members who were sent Class Notice[7], after updating records based on the NCOA database (*see* Dkt. No. 50 ¶¶ 7-10), which easily satisfies due process. *See Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) ("First class mail is ordinarily sufficient to notify class members who have been identified"); *Morey v. Louis Vuitton N. Am. Inc.*, No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331, at *11-12 (S.D. Cal. Jan. 9, 2014) (finding that mail and email notice "fully complied with due process principles"); *Spears v. First Am. Eappraseit*, No. 5-08-CV-00868, 2015 U.S. Dist. LEXIS 58530, at *32-34 (N.D. Cal. Apr. 27, 2015) (finally approving settlement which provided for class notice via direct mail after updated addresses through the NCOA database, a settlement website and IVR phone line).

However, even if that were not enough, the Administrator sent reminder notices via mail to 70,624 potential class members and via email to 52,533 potential class members. *See* Dkt. No. 50, ¶¶ 9, 11. Moreover, notice was also provided through publication and detailed notice on the Settlement Website with a notice reach of at least 10,500,000 digital impressions for the publication notice alone. *See* (Dkt. No. 50, ¶ 12). The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010); *see also Adtrader, Inc. v. Google LLC* (2021 U.S. Dist. LEXIS 99777 (N.D. Cal. March 23, 2021). Here,

---

[7] Notice was emailed to 67,643 persons and mailed to 56,482 persons with 7,128 undeliverable addresses on the Settlement Class Member list.

the reach of the direct notice was much higher at 89.9%.

There is typically a 3-5% claims rate in consumer class actions, including those involving CIPA claims. *See, e.g., Ferrington v. McAfee, Inc.*, 2012 U.S. Dist. LEXIS 49160, at *13 (N.D. Cal. Apr. 6, 2012) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent."); *Forcellati v. Hyland's Inc.*, No.12-cv-1983, 2014 U.S. Dist. LEXIS 50600, at *17 (C.D. Cal. Apr. 9, 2014) (same); *Mount v. Wells Fargo Bank, N.A.*, BC395959 (Cal. Super. Ct. Aug. 13, 2014) (granting final approval of a CIPA class action settlement with a 4.2% claims rate); *Zaw v. Nelnet Business Solutions, Inc.*, No. 3:12-cv-05788-RS, Dkt. No. 39 (N.D. Cal. Dec. 1, 2014) (granting final approval of CIPA class settlement with a 1.8% claims rate).

Here, the valid claims rate of approximately 4.6% (6,021 divided by 130,005), is a strong indication of general approval of the Settlement by the Settlement Class Members. It is also in line with the up to 3-5% claims rate estimate given by Plaintiff's counsel.

### 4.    The Extent of Discovery Completed

The Parties conducted formal discovery, including Plaintiff sending written discovery and a setting a deposition. [McBride Decl., ¶ 8.] The Parties also exchanged significant informal discovery to determine class size and other information relevant to Fed. R. Civ. P. 23 elements. With all this discovery completed, the litigation has reached a point where both parties had "a clear view of the strengths and weaknesses of their cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) (internal quotation marks omitted). Thus, the Parties have exchanged more than enough information to make an informed decision about settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1988) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.'").

### 5.    The Experience and Views of Counsel

While the Court should not blindly follow counsel's recommendations, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement was the product of arm's-length negotiations

by capable, experienced counsel who have "an intimate familiarity with [the] lawsuit after spending years in litigation[.]" *Id.*; *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

It is the judgment of Class Counsel experienced in CIPA class action litigation that this settlement is fair, reasonable, and adequate, benefiting all Settlement Class Members who submitted valid Claims. *See* Kazerounian Decl., ¶¶ 11, 14; McBride Decl., ¶¶ 13, 18; Young Decl., ¶¶ 11 , 17. Indeed, as demonstrated by their accompanying declarations, Class Counsel are highly experienced consumer class action lawyers who have been recognized for their knowledge and experience in complex consumer class action litigation. *See, e.g.,* Dkt. Nos. 47-1, ¶¶ 16-81; 47-2, ¶¶ 16-48; 47-3, ¶¶ 15-24. Thus, Class Counsel now unequivocally assert that the Settlement should be finally approved by this Court. Kazerounian Decl., ¶ 14;  McBride Decl., ¶ 19; Young Decl., ¶ 17.

### 6.    <u>Positive Reaction of Settlement Class Members</u>

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecoms. Coop.*, 221 F.R.D. at 529 (citations omitted). The absence of any objections or requests for exclusion here (Dkt. No. 50, ¶ 14) is an important factor in evaluating the fairness, reasonableness, and adequacy of settlement; it also supports approval of the settlement here. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of . . . Settlement."); *Medieros v. HSBC Card Servs.*, No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *6 (C.D. Cal. Oct. 23, 2017) (granting final approval of a CIPA settlement where there were only 7 opt-outs and 1 objection).

Here, the fact that there has been no resistance to the Settlement, the reasonable valid claims rate of 4.6% for a consumer class action case, and the Class Representative supports the

final approval of the settlement (Tobajian Decl., ¶¶ 3, 5), further supports final approval of this settlement.

## VII.    POTENTIAL CY PRES RECIPIENTS OF UNCLAIMS FUNDS

Consistent with the Settlement Agreement's terms, Plaintiff requests that funds remaining in the Settlement Fund after any subsequent distributions (as administratively feasible) be awarded equally between the proposed *cy pres* recipients, the Center on Privacy and Technology at Georgetown Law and the National Consumer Legal Center, equally. Agr. § 4.1.6.

The National Consumer Law Center, founded in 1969, is a nonprofit organization that works for consumer justice and economic security for low-income and disadvantaged individuals, including the elderly.[8]

The Center on Privacy and Technology at Georgetown Law, Founded in 2014, is a think tank focused on privacy and surveillance law and policy.[9] The Center brings Georgetown Law's legal expertise to bear on privacy debates in federal and state legislatures, regulatory agencies and the academy. *Id.* The Center has been training Georgetown Law students to be leaders in privacy practice, policymaking and advocacy. *Id.*

Class Counsel believe that the proposed *cy pres* recipients are appropriate considering the nature of this suit, the objectives underlying the CIPA, and the interests of absent class members, including their geographic diversity. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011). Should a *cy pres* distribution be needed, Class Counsel intend on filing a formal motion with the Court indicating the amount to be distributed and discussing, in more depth, the proposed *cy pres* recipients' respective qualifications to receive such distribution.

## VIII.    CONCLUSION

In conclusion, the Parties have reached this Settlement following extensive and contentious negotiations, with the assistance of an experienced mediator. The settlement is fair, reasonable, and adequate for Settlement Class Members who were afforded notice that complies with the requirements of Rule 23 and due process.

---

[8] https://www.nclc.org/about-us/about-us.html (last visited December 5, 2024).
[9]  https://www.law.georgetown.edu/privacy-technology-center/about-us/

For the foregoing reasons, Plaintiff respectfully requests the Court:

- Grant final approval of the proposed settlement;
- Order payment from the Settlement Fund in compliance with the Court's Preliminary Approval order and the Agreement;
- Grant the Motion for Attorneys' Fees, Costs and Service Award;
- Enter the proposed final approval order submitted herewith;
- Enter the proposed Final Judgment submitted herewith
- Approve the proposed Cy Pres Recipients; and
- Retain continuing jurisdiction over the implementation, interpretation, administration, and consummation of the settlement.

Dated:  December 10, 2024                          Respectfully Submitted,

                                  **KAZEROUNI LAW GROUP, APC**

                          By:    */s Abbas Kazerounian*
                                  Abbas Kazerounian, Esq.
                                  *Attorneys for Plaintiff*